JOURNAL ENTRY AND OPINION
{¶ 1} Appellants John and Linda Dembie appeal from an order by the court of common pleas that affirmed a Cleveland Board of Zoning Appeals decision to grant a variance to appellee Rebecca Riker and her business, The Mutt Hutt. The Dembies maintain that the court erred by refusing to consider additional evidence on appeal from the board and that its affirmance of the board's decision was unsupported by reliable, probative and substantial evidence. We find no error and affirm.
 {¶ 2} The Mutt Hutt is described by the parties as a "doggie daycare" — a place where dog owners can leave their dogs in a supervised setting and pick them up at a later time during the day. The facilities are located on two parcels of land within the city of Cleveland. One parcel abuts Scranton Road and is zoned semi-industrial. The other parcel abuts Allman Court and is zoned multi-family.[1] Riker applied for variances on parts of each parcel which were zoned multi-family with the intention of using them as a "green space" in which to exercise the dogs. The city denied the application on grounds that a non-conforming use required board approval.
 {¶ 3} The board conducted a hearing on Riker's application. A number of neighboring homeowners and business owners testified. The Scranton Road industrial neighbors generally had no objection to the variance, but the residential neighbors on Allman *Page 5 
Court objected on grounds that barking would become a nuisance. Riker told the board that before she opened her business, she worked closely with neighborhood groups to address concerns about the nature of the business. As a result, she permitted the dogs outside only between the hours of 8:00 a.m. and 5:30 p.m., the dogs are inside "for the most part of the day," and the dogs are supervised whenever they are outside. The councilman for Riker's ward told the board that he had no objection to the variances, and emphasized that Riker was not "expanding" her business, but merely seeking to increase the exercise area for the larger dogs.
 {¶ 4} The board unanimously approved the requested variances. The Dembies appealed to the court of common pleas, offering evidence that some of the persons who supported Riker's application were not residents of the neighborhood who might be affected by the variance. They also complained that the board refused to listen to an audiotape of barking dogs from The Mutt Hutt, and also failed to place into evidence a letter from a former councilman in the affected ward. The court overruled the Dembies' objections and affirmed the board's decision.
 {¶ 5} Unlike the court of common pleas, we do not consider the entire record to determine "whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. City of Youngstown Bd. of Zoning Appeals,90 Ohio St.3d 142, 147, 2000-Ohio-493. Our standard of review is limited to "questions of law" and does not permit *Page 6 
us to weigh the evidence or substitute our judgment for that of the court. See R.C. 2506.04; Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
 I {¶ 6} The Dembies first complain that the court failed to conduct a hearing on their administrative appeal, as allowed by R.C. 119.12, to consider the additional evidence they offered relating to the validity of Riker's neighborhood petitions.
 {¶ 7} R.C. 119.12 does not apply in this appeal because that section pertains to administrative appeals from state agencies. See In reCertificate of Need Application of Providence Hosp. (1990),67 Ohio App.3d 391, 396. R.C. 2506.01, which governs appeals from decisions of political subdivisions, governs this appeal.
 {¶ 8} Ordinarily, the court of common pleas is "confined to the transcript" filed by the administrative agency. See R.C. 2506.03(A). An exception to this rule exists, however, in cases where it appears, on the face of that transcript or by affidavit filed by the appellant, that "[t]he transcript does not contain a report of all evidence admitted or proffered by the appellant." See R.C. 2506.03(A)(1). If the appellant makes that showing, the court must hear the appeal on the filed transcript and any additional evidence introduced by any party, with the opportunity for cross-examination of any witness who previously gave testimony in opposition to that party. See R.C. 2506.03(B).
 {¶ 9} In assignments of error filed with the court of common pleas, the Dembies argued that the transcript from the hearing before the board omitted a letter from a neighborhood group that opposed the variance application and a letter from a former *Page 7 
councilman for the ward. The Dembies further argued that the board refused to listen to an audiotape of dogs barking at The Mutt Hutt.
 {¶ 10} The transcript shows that the board received a letter from the neighborhood group and that it was entered into the record. The letter appears in the transcript transmitted to the court of common pleas. Even though the contents of this letter were not read aloud into the record, the transcript shows that the neighborhood group's chairman appeared and spoke at the hearing, specifically referenced the letter, and spoke at length about the neighborhood group's reasons for not endorsing the application for a variance. There is nothing in the transcript to suggest that any of this was ignored by the board.
 {¶ 11} The transcript also contains the letter sent by the former councilman. The board chairman specifically noted having received "a letter that we'll put in that the ex-councilman and, well, previous, councilman, * * * was against it." Linda Dembie addressed the board and noted that the former councilman had told her that, at the time Riker opened the business, she "would talk to the residents." Dembie told the board that Riker did not immediately do so. This statement corresponded with a portion of the former councilman's letter in which he "suggested to Ms. Riker that she walk around and speak with the directly affected neighbors. I cannot say whether or not this was done." As with the letter from the neighborhood group, the evidence shows that the board considered the letter from the former councilman.
 {¶ 12} Finally, although the record does show that the board refused to listen to an audiotape of dogs barking, the board did not abuse its discretion by refusing to consider the *Page 8 
tape. Hy-Level Land Co. v. Cuyahoga Cty. Bd. of Revision (Feb. 17, 2000), Cuyahoga App. No. 75457. The chairman told Linda Dembie that "I don't want to listen to the dogs barking," noting that Riker's existing use was legal. Presumably, the board concluded that an audiotape of dogs made on an existing use would offer no indication of any future use or expansion of the parcel, particularly given Riker's representations that she would not be expanding the number of dogs that would be present on the property if the variances were granted. Viewed in this light, the board's refusal to listen to the audiotape was a determination that the recording was irrelevant. This was a conclusion that rested within the board's discretion.
 {¶ 13} The Dembies claim that a number of neighborhood petitions submitted by Riker contained signatures from persons who did not live in the area, and in fact lived in suburbs outside the city. These petitions were included in the transcript transmitted to the court of common pleas. The court had access to these petitions and could easily determine the location of each signatory. The board's decision to admit these petitions was not an abuse of its discretion because any residency discrepancies went to the evidentiary weight of the petitions, not their initial admissibility.
 {¶ 14} The remaining claims by the Dembies concern evidence discovered after the hearing before the board and offered for the first time in a reply brief filed with the court of common pleas. The Dembies claimed that one person who spoke before the board characterized her relationship with Riker as being "good friends," but that this person was, in fact, the statutory agent for The Mutt Hutt. The Dembies also claimed to have discovered *Page 9 
that a person who claimed to have worked in the business next door to The Mutt Hutt was not an employee of the business at the time and therefore not authorized to speak for it. Riker filed a motion to strike the reply brief, but the court found the motion to strike moot in light of its decision to affirm the board.
 {¶ 15} The court did not need to conduct an evidentiary hearing to determine whether the person characterized as Riker's friend also acted as Riker's statutory agent because that fact would not have carried any significant weight with the court. The friend opened her remarks to the board by stating, "[i]n the interest of full disclosure, Rebecca and I are good friends and we met because we were both on the committee to try to site the dog park in this Tremont neighborhood." This friend also told the board that "I'm actually a client" of Riker's. Given this candor, it is difficult to see how a further disclosure that this "good friend" had been Riker's statutory agent would have tipped the balance in the board's consideration of the variance.
 {¶ 16} We likewise agree that information relating to the person who worked next-door to The Mutt Hutt did not constitute evidence that required the court to conduct an additional hearing. The Dembies merely offered evidence that this person was not the shop manager at that business; they did not contest that he worked for the business at the time and had first-hand knowledge of how The Mutt Hutt operated. So even if the Dembies' assertion was taken as true, this employee's actual job title was without consequence in light of his direct knowledge of Riker's business. The court had no obligation to conduct a hearing in order to allow the Dembies to attack an immaterial point of evidence. *Page 10 
 II {¶ 17} The Dembies next complain that the court's affirmance of the board's decision to grant the variance was not supported by any reliable, probative, and substantial evidence. They argue that the court chose to ignore over 70 petitions signed by neighboring residents in opposition to the variance.
 {¶ 18} The Dembies ask us to weigh the evidence, arguing "[t]he lower court chose to ignore the seventy plus signatures from immediate area residents in opposition to the proposed variance and unreasonably weighed the fourteen or so residents in favor of the variance with greater weight." As earlier noted, our standard of review is limited to "questions of law." We are not permitted to weigh the evidence or substitute our judgment for that of the court. Absent any specific argument relating to issues of law, we must overrule the Dembies' assigned errors.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
COLLEEN CONWAY COONEY, P.J., and SEAN C. GALLAGHER, J., CONCUR
[1] The evidence shows that at the time they entered into the lease, neither Riker nor her landlord were aware of the mixed zoning. It appears the city itself did not know either, as Riker's initial certificate of occupancy listed the property as semi-industrial. *Page 1